# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| MELISSA HODGE, ) | |
| ) | |
| Plaintiff, ) | No. 2:20-cv-02560-DCN-MGB |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| THE CITY OF NORTH CHARLESTON; ) | |
| ANTHONY DENNIS, in his representative ) | |
| capacity for the Office of the Sumter ) | |
| County Sheriff; T.L. CRIDER; GEORGE ) | |
| VANTINE; JOHN DOE; and JANE DOE, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter comes before the court on United States Magistrate Judge Mary Gordon Baker's report and recommendation ("R&R"), ECF No. 18, that the court grant defendant George Vantine's ("Detective Vantine") motion to dismiss, ECF No. 6. For the reasons set forth below, the court adopts the R&R and grants the motion to dismiss without prejudice.

## I. BACKGROUND

This case arises out of an arrest in connection with the theft of a truck and utility vehicle from a community center parking lot on December 22, 2018. After receiving reports of the theft, the North Charleston Police Department investigated. According to surveillance footage of the parking lot, two individuals, a man and a woman, were responsible for the theft. After reviewing the footage, Detective T.L. Crider ("Detective Crider") identified the woman as Amanda McDonald ("McDonald") and obtained warrants for McDonald's arrest. On or around January 4, 2019, Detective Crider received a note suggesting that the woman in the video was not McDonald, but plaintiff

1

Melissa Hodge ("Hodge"). Based on this tip, Detective Crider and Detective Vantine (collectively, "defendants") reviewed the surveillance footage and concluded that the woman in the video more closely resembled Hodge than McDonald. Consequently, Detective Crider withdrew the arrest warrants for McDonald and sought new warrants for Hodge, swearing before a magistrate that she had probable cause to suspect Hodge of the theft. On January 5, 2019, Hodge was arrested. Seeking to prove Hodge's innocence, Hodge's family met with Detective Vantine. When Detective Vantine interviewed her, Hodge denied any wrongdoing. Ultimately, Detectives Crider and Vantine determined that they had misidentified Hodge as the female suspect in the surveillance video. Hodge was released, and the warrants were withdrawn.

On May 20, 2020, Hodge filed the instant action in the South Carolina Court of Common Pleas, alleging, under 42 U.S.C. § 1983, various civil rights violations by Detectives Crider and Vantine. ECF No. 1-1, Compl. On July 9, 2020, defendants removed the action to the United States District Court for the District of South Carolina. ECF No. 1. All pretrial proceedings in this case were referred to Magistrate Judge Baker pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.).

On July 9, 2020, Detective Vantine filed a motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(6). ECF No. 6. On August 14, 2020, Hodge responded to the motion, ECF No. 11, and, on August 21, 2020, Detective Vantine replied, ECF No. 17. On September 10, 2020, Magistrate Judge Baker issued an R&R, recommending that the court grant Detective Vantine's motion to dismiss. ECF No. 18. On October 14, 2020, Hodge filed an objection to the R&R. ECF No. 25. Detective Vantine did not respond to the

objections, and the time to do so has now expired. Accordingly, Detective Vantine's motion to dismiss is now ripe for review.

## II. STANDARD

### A. R&R

The magistrate judge makes only a recommendation to the court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with the court. Id. at 270-71. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made. Id. However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the magistrate judge's proposed findings. Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

### B. Motion to Dismiss

A Rule 12(b)(6) motion for failure to state a claim "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009)

(citations omitted). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A Rule 12(b)(6) motion should be granted only if it appears certain that the plaintiff cannot prove any set of facts that would support her claim and would entitle her to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., Inc., 7 F.3d at 1134. Nevertheless, the court need not accept "unwarranted inferences, unreasonable conclusions or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009) (quoting Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III.  DISCUSSION

In her complaint, Hodge only asserts one cause of action against Detective Vantine—a Fourth Amendment claim brought under § 1983 for illegal seizure based on invalid warrants. Specifically, Hodge alleges that Detective Vantine helped procure invalid warrants that caused her to be arrested without probable cause, thereby violating her right to be free from unreasonable seizures under the Fourth Amendment. In the

R&R, the Magistrate Judge recommended that the court grant the motion to dismiss this claim against Detective Vantine. The R&R explained that Hodge did not sufficiently allege that Detective Vantine was personally involved in obtaining the allegedly invalid warrants to impose liability under § 1983. ECF No. 18 at 7. Hodge objects, arguing that the Magistrate Judge failed to draw "all reasonable inferences" in Hodge's favor regarding Detective Vantine's involvement in her arrest. ECF No. 25 at 1. Because the court cannot reasonably infer that Detective Vantine was personally involved in the alleged illegal seizure based on invalid warrants, the court overrules the objection.

The Fourth Amendment provides a federal right to be free from unreasonable seizures. U.S. CONST. amend IV. "[S]eizure of an individual effected without probable cause is unreasonable." Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996) (citing Graham v. Connor, 490 U.S. 386, 396–97 (1989)). Generally, a seizure qualifies as unreasonable if it relies on a warrant issued without probable cause. Id. at 183–84; see also Truelove v. Hunt, 67 F. Supp. 2d 569, 577 (D.S.C. 1999) ("[A] search or seizure based upon an invalid warrant is the same as a warrantless search and is also unconstitutional." (citing United States v. Leon, 468 U.S. 897 (1984))).

A warrant may lack probable cause if it stems from a dishonest affidavit. See, e.g., Miller v. Prince George's Cnty., 475 F.3d 621, 626–31 (4th Cir. 2007) (holding that the plaintiff stated a valid § 1983 claim against an officer who allegedly submitted a warrant affidavit with intentional or reckless material misrepresentations). To state such a claim, a plaintiff must demonstrate either (1) that the officer "deliberately or with a 'reckless disregard for the truth' made material false statements in his affidavit," or (2) that the officer "omitted from that affidavit 'material facts with the intent to make, or

5

with reckless disregard of whether they thereby made, the affidavit misleading,'" id. at 627 (internal citations omitted).

Liability under § 1983 attaches only to defendants who were personally involved in violating a plaintiff's rights. Plaintiffs must demonstrate "that each [official], through the official's own individual actions, has violated the Constitution." Elkins v. District of Columbia, 690 F.3d 554, 564 (D.C. Cir. 2012) (quoting Iqbal, 556 U.S. at 676). The Fourth Circuit has addressed the level of personal involvement required to establish individual liability under § 1983. "In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'" Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (quoting Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)). Officials who have "played key roles" in an alleged violation, such as by "authoriz[ing]" or "seeking and recommending approval" of the actions at issue may be subject to liability under § 1983. Williamson v. Stirling, 912 F.3d 154, 171–72 (4th Cir. 2018) (holding that officers who "played key roles" in placing the plaintiff in solitary confinement were sufficiently involved for purposes of § 1983, but concluding that official who had "no involvement in the request or execution" of the confinement could not be held liable). The official "must have had personal knowledge of and involvement in the alleged deprivation . . . in order to be liable." Wright, 766 F.2d at 850.

The court agrees with the R&R that Hodge has not alleged facts to support a reasonable inference that Detective Vantine personally "supplied false information and omitted exculpatory information in the warrant affidavit for Hodge's arrest." Compl. at 12. Hodge contends that Detective Crider, not Detective Vantine, "applied for [the]

6

warrants for the arrest of [] Hodge" and "swore there was probable cause [for Hodge's arrest.]" Id. at 7.  Hodge does not allege that Detective Vantine was involved in any aspect of applying for the warrants for Hodge's arrest or submitting any information in the warrant affidavit.  Hodge only alleges that Detective Vantine opined that the woman in the surveillance video resembled Hodge more than McDonald.  Based on this fact alone, the court cannot reasonably infer that Detective Vantine intentionally or recklessly made any false statements or misrepresentations in the warrant affidavit.

      Hodge argues that Detective Vantine can still be held liable even if Detective Vantine did not make a false statement or misrepresentation in the warrant affidavit or application.  Effectively, Hodge argues that Detective Vantine may be liable for playing "a key role" in her illegal arrest.  Williamson, 912 F.3d at 171–72.  Hodge argues that the court should infer that Detective Vantine played a key role in her illegal arrest due to (1) his review of the surveillance video and (2) his purported post-warrant involvement in the investigation.  But the allegations in the complaint do not give the court a reasonable basis to so infer.

      First, the court cannot reasonably infer that Detective Vantine played a key role in obtaining the warrants against Hodge based on Detective Vantine's alleged review of the surveillance video.  Again, Hodge only alleges that Detectives Crider and Vantine agreed together that the woman in the video more closely resembled Hodge than McDonald and that, after this review, Detective Crider sought the arrest warrants for Hodge.  Importantly, Hodge alleges that Detective Vantine involved himself in the investigation only after Detective Crider alone initially identified the woman in the surveillance video as McDonald, swore as much before a magistrate, and received a tip that Hodge might be

7

the woman in the video.  Even after Detective Vantine allegedly entered the picture, Detective Crider alone applied for Hodge's arrest warrants and swore that probable cause existed.  Hodge does not allege that Detective Vantine instructed Detective Crider to so apply, knew of any false statements or misrepresentations in the warrant application, or even knew that a warrant application was being submitted.  See Wright, 766 F.2d at 850 (the official "must have had personal knowledge of and involvement in the alleged deprivation . . . in order to be liable.").  In other words, Detective Crider allegedly investigated the identities of the persons in the surveillance video, pursued leads, and obtained the warrants in the investigation.  In contrast, Hodge asserts only that Detective Vantine observed, with Detective Crider, the resemblance between Hodge and the woman in the surveillance video.  While the court must make all reasonable inferences in Hodge's favor, Detective Vantine's pre-arrest role, as alleged, is too inconsequential to permit the court to infer that Detective Vantine played a key role in obtaining invalid warrants for Hodge's arrest.  See Nemet Chevrolet, 591 F.3d at 253 ("[W]e need not accept as true unwarranted inferences, unreasonable conclusions or arguments." (quoting Giarratano, 521 F.3d at 302)).  Thus, the court cannot infer that Detective Vantine personally deprived Hodge of her rights simply because he allegedly observed her resemblance to a suspect depicted in video surveillance.

      Detective Vantine's alleged involvement after Hodge's arrest likewise does not permit a reasonable inference that Detective Vantine played a key role in Hodge's purportedly unlawful seizure.  Hodge alleges that she and her family were directed to Detective Vantine when they sought to dispute her outstanding warrants, that Detective Vantine questioned her after her arrest, and that Detective Vantine determined that he and

Detective Crider had misidentified Hodge as a suspect. These allegations are irrelevant to the court's inquiry, however, because the constitutional violation of which Hodge complains—her arrest based on the allegedly invalid warrants—had already occurred. The law requires that the defendant be personally involved in the violation, not its aftermath. See Wright, 766 F.2d at 850; see also Sizemore v. Morris, 2020 WL 247309, at *5 (S.D. W. Va. Jan. 15, 2020) (dismissing § 1983 claim against an officer where plaintiff failed to allege that the officer "was involved in the drafting of the [warrant] affidavit" or knew of misrepresentations therein). Viewed in Hodge's favor, Hodge's well-pleaded allegations allow the court only to contemplate a "mere possibility" that Detective Vantine's role in Hodge's allegedly illegal arrest exceeded his remarks on the surveillance video. Iqbal, 556 U.S. at 679. But "mere possibility" will not suffice. Id. Hodge fails to nudge her claim that Detective Vantine played a key role in her illegal arrest across the line from "conceivable to plausible." Id. at 680.

As such, the court cannot reasonably infer that Detective Vantine was personally involved in arresting Hodge without probable cause in violation of the Fourth Amendment. Therefore, Hodge has failed to state a plausible claim against Detective Vantine under § 1983.

## IV. CONCLUSION

For the foregoing reasons, the court **ADOPTS** the Magistrate Judge's R&R and **GRANTS** Detective Vantine's motion to dismiss without prejudice.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**March 15, 2021
Charleston, South Carolina**

10